Milligan, J.,
delivered tbe opinion of tbe court:
Tbis is an application to recover tbe proceeds of seventy-seven bales of cotton seized by tbe military authorities of tbe United States, at or near tbe city of Atlanta, in 1864.
Tbe facts upon wbicb tbe case rests are found to be substantially as follows: In 1862-’63 tbe claimant purchased tbe cotton in question from country wagons, and stored it in a lot owned by him, in tbe city of Atlanta, near tbe Western and Atlantic railroad and in full view of persons passing on tbe railroad, and in tbe streets in that vicinity. On tbe advance .of tbe United States forces, tbe claimant became apprehensive that it would be burned by tbe retreating rebel army, and to avoid its destruction be caused it to be removed and deposited in three different parcels, at different points in tbe country. After tbe capture of tbe city by General Sherman, tbe claimant informed Captain Hade, tbe acting quartermaster in charge of captured and abandoned property, of bis cotton, and that it was not in good shipping order. Hade thereupon, in writing, requested tbe military authorities (to save himself trouble, as be states) to furnish him with tbe necessary passes to go out and repair tbe bagging; and, also, commandants of United States troops, having means of transportation, to furnish him such facilities as would enable him to bring tbe cotton in. Soon after, in September, 1864, tbe cotton was brought into tbe city in charge of tbe military, and on government wagons, and placed in tbe State Eoad depot under charge of tbe Federal authorities. It remained there in their custody a short time and was then shipped through Chattanooga to Nashville, where it was'reshipped on the Louisville road.
Tbe cotton is clearly identified, and tbe ownership abundantly proven. Each bale was marked with tbe name of “John Sil-vey;” but nó receipt appears to have been given for it, because, as explained by tbe witnesses, Captain Hade was not in Atlanta at tbe time it was removed by tbe Federal authorities from that place. Tbe train that carried it out was one of tbe last that left tbe city; and Captain Hade bad left Atlanta before tbe cotton was delivered at tbe depot.
No question of tbe loyalty of claimant is seriously made, and indeed none can be, for it is fully established.
Tbe only question of any difficulty arises on tbe proof, wbicb *493 is not as full and satisfactory, in all respects, as could be desired. Tlie evidence produced from tbe Treasury Department does not distinctly show that the cotton described by the witnesses, marked with the name of “John Silvey,” passed through the assistant special agent’s office at Nashville. The precise time when the cotton was shipped does not appear; but it does appear that it was among the last lots that went out from Georgia, and that in point of fact, it was first taken charge of by the United States military forces, under the request of Captain Hade, in the country, some distance from the city of Atlanta, where it had been removed by the claimant to avoid destruction by the retiring rebel army, and therefore, may have well been included in the assistant special agent’s account at Nashville, in the one hundred and eighty bales about that date, shown to have been shipped “from Georgia.” The only thing that militates against this view of the case is the fact that claimant’s cotton was marked with his name, which does not appear from the agent’s return to have been on any of the one hundred and eighty bales mentioned by him as coming from Georgia.
But this apparent defect in the proof is met by the positive testimony of two witnesses, who are unassailed and uncontra-dicted, that the cotton was brought into Atlanta under charge of the United States military forces, and there detained in their custody until it was shipped to Nashville, where it was reshipped on the Louisville cars.
We cannot disregard such testimony. After the cotton is. shown to have been captured, or seized by the United States military forces, and once fairly in their possession and under their control, it is presumed that the agents of the government charged by law with any duty in respect to it, faithfully perform that duty; and certainly, if they do not, the claimant is not responsible for them default. They are responsible to the government under their bonds, and stimulated to a strict performance of duty by the severest penalties imposed by the act of the 12th of March, 1863; and we dare not say, without convincing proof, that they failed in its discharge.
At all events, when the property is clearly shown to have gone into the hands of the lawful military authorities, and, as in this case, under the direction of the quartermaster charged with the collection of captured and abandoned property, the law presumes that it was regularly sold, and the proceeds paid *494 over into tbe Treasury of tbe United States as directed bylaw; and tbe burden of proof to show tbe contrary in every sncb case rests upon tbe defendants.
This presumption, like all others, may be rebutted, but in this case no attempt is made by proof to remove it, and we cannot do otherwise than to treat it as a case in which the proceeds of tbe sale of tbe cotton seized were regularly paid over into tbe Treasury. Tbe seizure was lawful, tbe custody and control of tbe cotton by tbe military complete, and its shipment traced from Atlanta to Nashville, and on to tbe Louisville cars.
Added to this, one hundred and eighty bales of cotton appears on tbe assistant special agent’s returns at Nashville, which were tbe last shipments of cotton from G-eorgia in 1864, and in this respect corresponds with tbe proof in this case, and tends strongly to establish tbe fact that tbe claimant’s seventy-seven bales, although not shown to bear tbe name of “John Silvey,” on tbe agent’s return, were included in these shipments. ( A majority of tbe court therefore think tbe claimant entitled to recover tbe proceeds of seventy-seven bales, and we find the amount to be $27,715 38, for which judgment will be entered.